## MRS. EFFIE DAVIS v. THE STATE.

No. 10472.   Delivered February 9, 1927.

Rehearing granted June 24, 1927.

**1.—Manslaughter—Statement of State's Attorney—Of His Case to Jury— No Error Shown.**

Where, on a trial for murder, resulting in a conviction for manslaughter, appellant complains of the insufficiency of the statement to the jury by the District Attorney as to what he expected to prove on the trial, the bill shows no error.

**2.—Same—Evidence—As to Body of Deceased—Properly Admitted.**

There was no error in permitting the sheriff to testify that when he reached the scene of the homicide, shortly thereafter he found the body of the deceased lying in the yard near some bushes, on his back.

**3.—Same—Evidence—Immaterial and Harmless.**

There was no error prejudicial to appellant in permitting the state to prove that deceased and his people belonged to the Missionary Baptist Church, it also being shown that appellant was affiliated with the same church.

**4.—Same—Evidence—Opinion of Witness—Properly Excluded.**

There was no error in refusing to permit a hotel clerk to give his opinion that appellant and deceased and the little daughter of appellant when at his hotel did not have time to get a lunch between the time they registered and left the hotel, and their return to the hotel.

**5.—Same—Character Witness—Scope of Examination—No Error Shown.**

There was no error in refusing to permit appellant to show by the witness, Rev. H. E. Davis, what official position he held in his church and Sunday school, after said witness had testified to the good reputation of appellant.

**6.—Same—Continued.**

Nor was there any error in the court's refusal to permit counsel for appellant to dictate his bill of exception, showing what he expected to prove by the witness R. E. Davis and Dr. Aldridge, in the presence and hearing of the jury, such testimony being excluded by the court.

**7.—Same—Evidence—Of Deceased's Insanity—Properly Excluded.**

No error is shown in the refusal of the court to permit appellant to prove by a brother of deceased that a complaint for lunacy had been filed against deceased in 1922. The complaint itself would have been the best evidence.

**8.—Same—Evidence—Of Motive—Properly Admitted.**

In support of the state's theory of motive, there was no error in permitting the state on cross-examination of appellant, and by the witness Mrs. Henry, to show appellant's dissatisfaction with the furnishings in the home the deceased had brought her to and her expressed desire for finer furniture and surroundings.

**9.—Same—Continued.**

Nor was there error in the state's cross-examination of appellant touching her surroundings before her marriage to deceased, in rebuttal of her direct examination.

**10.—Same—Evidence—Appearance and Demeanor of Appellant—Properly Admitted.**

Nor was there error in permitting the County Attorney and sheriff to testify that when they reached the scene of the homicide, appellant appeared to be cool and composed, in rebuttal of her testimony, that when she shot deceased she was so excited she didn't know what she was doing.

ON REHEARING.

**11.—Same—Evidence—Expert Opinion—On Temporary Insanity—Improperly Excluded.**

On rehearing, our attention is called to the fact that the issue of temporary insanity having been raised by appellant upon the trial, it was error to refuse to permit the appellant's witness, Dr. Aldridge, to answer the hypothetical question propounded by appellant, embracing her condition as testified to by herself, and for this error the cause is now reversed and remanded.

Appeal from the District Court of Upshur County. Tried below before the Hon. J. R. Warren, Judge.

Appeal from a conviction for manslaughter, penalty four years in the penitentiary.

The opinion states the case.

*B. Jay Jackson* of Cleburne, *C. E. Florence* of Gilmer, for appellant. On expert testimony on insanity issue, appellant cites: Thomas v. State, 262 S. W. 84; Wicks v. State, 280 S. W. 787, and Batcham v. State, 284 S. W. 549.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of manslaughter, and her punishment assessed at four years in the penitentiary.

The record discloses that the appellant was charged with the murder of her husband, Jim Davis, by shooting him with a pistol. It appears that the appellant and deceased had only been married a few days at the time of the homicide and had only been occupying the residence where the homicide occurred a couple of days; and that the appellant had a baby girl about five years of age by a former husband. It was evidently the contention of the state that the appellant killed deceased on account of his misrepresentations to her prior to the marriage as to his property, and upon his refusal to furnish her with such household and kitchen furniture as she desired; and that by reason of his misrepresentations regarding his property she secured a pistol and shot the deceased in the back of the head, without provocation, while he was working around some shrubbery in the yard. It is further shown by the record that at the time of the homicide there was no one present except the deceased, appellant and her small child. Appellant first contended that the homicide was committed by her former husband, and that she narrowly escaped a shot fired at her at the same time. She afterwards admitted the killing to the sheriff, and contended that the reason for her former statement to the effect that her first husband was the guilty party was on account of being afraid of the relatives of the deceased. The appellant's defense was that the deceased became angry with her on account of bringing her little girl with her; that he refused to furnish her and the child with food while en route to their future home; that he insisted upon her getting rid of the child, and had threatened, on the evening of the homicide, that if she didn't get rid of the child he would kill her and the child that night; and that by reason of said threats and fear of her life and that of her child, she killed the deceased.

The record contains 21 bills of exception, the number of which precludes a discussion of each bill separately. Bill No. 1 complains of the insufficient statement of the District Attorney to the jury as to what he expected to prove in sustaining the charges in the indictment. This bill, as presented, shows no error.

Bill No. 2 complains of the action of the court in permitting

the sheriff to testify, over appellant's objection, that when he reached the scene of the homicide, deceased was lying on his back near a flower bush, it being contended that there was no evidence showing that the body was in the same position as at the time when deceased fell. This objection would go to the weight and not to the admissibility of the testimony.

Bill of exception No. 4 complains of the action of the court in permitting the state to show that the deceased, his brother and relatives belonged to the Missionary Baptist Church. It appears from the bill that the deceased was living in a community of Mormons, and the objection to the testimony complained of was that it failed to prove any issue in the case and was prejudicial. This bill, as presented, shows no error; it fails to show in what way or manner the appellant was prejudiced by reason of such testimony, and fails to show that the appellant was a member of, or in any way in sympathy with, the Mormon belief. On the contrary, the record discloses that her religious activities were connected with the Missionary Baptist Church.

Bill No. 5 complains of the refusal of the court to permit the hotel clerk, Bishop Davis, to testify that on the night of March 18, 1926, a few days prior to the homicide, after deceased had registered and had been assigned to a room for himself, his wife and her little girl, and after they had inquired about getting something to eat and had stepped outside the hotel, they did not have time to go to the cafe and take lunch during the interval that elapsed while they were absent from the hotel. The court sustained the state's objection to this testimony on the ground that it called for an opinion and conclusion of the witness. We are of the opinion that there is no error shown in this bill, as the court permitted the witness to testify as to the distance from the hotel to the cafe and the time intervening between the departure and return of deceased and appellant to said hotel.

Bill No. 6 complains of the action of the court in refusing to permit appellant to show by the witness Rev. H. E. Davis what official positions the appellant held in his church and Sunday School. This bill, as presented, shows no error. This witness was permitted to testify to the general reputation of the appellant, his association with her, and what opportunity he had to know of said reputation.

Bill No. 7 complains of the refusal of the court to permit appellant's counsel to dictate, in the presence and hearing of the jury, his bill of exception stating what he expected to prove by the witness Rev. H. E. Davis, as set out in bill No. 6. The court qualifies this bill by stating that he declined to permit counsel

to state in the presence and hearing of the jury what he expected the witness to testify after having sustained the state's objection thereto. This bill, as presented, shows no error. It would be of little use for the court to refuse to permit this kind of testimony to go to the jury, and then permit counsel to state in the hearing and presence of the jury what he expected to prove by the witness.

Bill No. 8 complains of the refusal of the court to permit appellant's counsel to state in the presence and hearing of the jury what he expected to prove by Dr. Aldredge, and of the action of the court in requesting appellant's counsel to make known to him at the judge's stand what facts he expected to develop from said witness. The court's explanation of this bill is to the effect that in order to avoid the necessity of retiring the jury he made the request to appellant's counsel as stated above. This bill presents no error.

Bill No. 11 complains of the refusal of the court to permit appellant to prove by deceased's brother, Henry Davis, that a complaint for lunacy had been filed against the deceased in 1922. The court sustained the state's objection on the ground that the complaint would be the best evidence. This bill, as presented, shows no error.

Bills Nos. 12 and 17 complain of the action of the court in permitting the state to prove by appellant on cross-examination that she desired higher priced furniture than deceased had purchased for her after the marriage, and in permitting the witness Mrs. Henry Davis to testify that the appellant stated that the dining room table would do, but that she didn't intend "eating any meals off the damned thing." The appellant urges that this testimony was immaterial. We are of the opinion that this testimony was admissible as tending to show motive.

Bills Nos. 13, 14, 15, 16, and 20 complain of the action of the court in permitting the state to interrogate appellant concerning a certain letter written by her to deceased prior to their marriage, and in permitting the state to introduce parts of the letter in evidence, said letter being to the effect that, "I am still having h_____ here, the old man giving me the devil this morning." These bills indicate that this testimony was admitted by the courts for the purpose of rebutting the appellant's testimony in chief to the effect that prior to said marriage she was living with her aunt and uncle, that she was welcome there, and that she had a good, comfortable home with them. We are of the opinion that the evidence complained of was properly admitted for the purpose indicated.

Bill No. 19 complains of the action of the court in permitting the state to show by the sheriff that when he and the County Attorney reached the scene of the homicide they talked to the appellant and she appeared to be cool and composed. We think this testimony was admissible as tending to show deliberation and malice, and also in rebuttal of the evidence of appellant to the effect that when she shot deceased she was so excited she didn't know what she was doing.

Having carefully examined the entire record, and having found no reversible errors therein, we are of the opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant complains in her motion for rehearing that we omitted a discussion of the matter complained of in bill of exception nine and insists that it reveals an error which demands reversal. The bill in question recites that among other defenses appellant urged the plea of temporary insanity, and that Dr. Aldredge had testified that on one occasion he had seen appellant when she was in a nervous and hysterical condition and did not know what was being done or said, and that appellant then propounded to the doctor the following question:

"Doctor, basing your answer upon your knowledge of medicine and anatomy, a person who had been operated on for appendicitis under an anaesthetic, who had had adenoids and tonsils operation under an anaesthetic, and who had undergone a mastoid operation under an anaesthetic, what effect, Doctor, are these operations and conditions which you have stated, calculated to have upon her general nervous system and mental condition?"

Upon objection by the state the court refused to permit an answer. The bill shows that if permitted the doctor would have testified in reply to the question that:

"* * in his opinion the various operations and the administration of the anaesthetic on different occasions would tend to weaken and impair her nervous system, leaving her easily

excited, and would also tend to weaken her mentally, causing her to lose control of her mental faculties and be of a highly nervous temperament."

In approving the bill the learned trial judge appended the following qualification: "There was no issue of temporary insanity raised by the evidence." This qualification in all probabilty caused us to refrain from a discussion of the bill in our former opinion. Our attention is now directed to the fact that notwithstanding the qualification the court did submit to the jury in paragraph 8 of his charge the question of temporary insanity, telling the jury in the very first line of said paragraph that "an issue raised by the evidence is that of temporary insanity and upon this issue you are charged, etc." Then follows instructions upon the subject of insanity, informing the jury that before it would be a defense that such insanity must have existed at the very time the offense was committed and directing the jury to acquit appellant upon the ground of insanity if they should find she did not know what she was doing when she killed deceased. Finding a direct contradiction between the qualification to the bill and the charge of the court we are called upon to consider the bill, notwithstanding the qualification.

Appellant testified that she had under an anaesthetic undergone all the operations mentioned in the question to Dr. Aldredge. We quote from her further direct testimony as follows:

"Yes, at or about that time or after that time and on that day, (that is, the day of the killing) he said something to me with reference to the baby, at that time he told me 'You have got to get shed of her, I am going to kill her and I am going to kill her tonight.' He then went out and I don't know what he was doing—I just went perfectly wild when he was going to kill my baby. No, I did not know anybody out there in that community, nobody but his two brothers where I had been, and I had met Mrs. Bailey the evening before, just a little while. When he told me he was going to kill my baby I don't know what I did then do, I don't remember. Q. How long was it after that time before you got the gun, if you remember about getting the gun to go out in the yard to shoot him? A. I don't remember how long it was. I don't remember whether or not it was almost immediately. I killed Mr. Jim Davis to keep him from killing my baby, he said he I must get 'shed' of her, if I didn't he was. Yes, I believed that he intended to kill my baby. On the night before he complained of this child sleeping in the bed with us and wanted me to put her on the floor. Yes, he objected to the

child sleeping in the bed with us, he did not want her to sleep with us. Yes, when he made the statement on Tuesday afternoon that he did, about which I have testified, that he wanted me to get shed of the child and if I did not he was and that he was going to do it that night, he appeared to be mad and angry with me at that time about the child."

Upon cross-examination she testified:

"After he put the books down he went out doors and he come back—he went on thru the house. He went out the back the first time, I don't know whether he was out there hitting around the flowers or not. I don't remember what he was doing when I shot him. I don't know how many times I shot him. I shot him to keep him from killing my baby. I don't know right where he was and don't know what he was doing. He was going to kill the baby that night and I just couldn't stand it. As to whether it is true that at the time I killed him he was not doing a thing either to me or to the baby, I will say I don't know what he was doing."

Other evidence in the record from appellant is to the effect that deceased was displeased with the presence of her child and on many occasions so expressed himself. There is evidence in the record which would contradict appellant as to her state of mind at the time of the killing, but that was a question of fact for the jury. Upon her probable state of mind as involving the issue of temporary insanity we can not escape the conclusion that the excluded evidence of the physician was admissible and material. It would have aided the jury perhaps in determining the issue submitted to them by the court. In rejecting the proffered testimony we think the court fell into error which demands a reversal.

We think the other questions renewed in appellant's motion were correctly disposed of in our former opinion.

The motion for rehearing is granted, the judgment of affirmance is set aside and the judgment now reversed and the cause remanded.

*Reversed and remanded.*